The Chief Justice delivered the opinion of the court.
Robert Woodward came before this court in September, 1825, and having shewn that a-road had been laid out in *29 part through his lands, and in part through the lands of other persons, and that the road as laid out and returned by the surveyors varied in certain parts from the petition of the applicants and the order of the court of common pleas, he obtained the allowance of a writ of certiorari. On the return of the writ, David Mairs and others, certain of the land owners, made an application to the court to quash the writ, and the arguments of the counsel of the parties wero heard at the last term.
Certain principles applicable to this subject are well settled. The allowance of a writ of certiorari in cases of this kind is in tho discretion of the court, who are discernere per legem quid sit justurn. Coxe 250, Penn. 1026, 1 South. 389. On the return of the writ, if such matters, other than those properly inquirable into by the writ, are shewn to the court, by a party whoso rights or interests are affected, as would if shewn at the moment of application, have induced the court to refuse the allowance, the writ will be quashed. This rule results from the fact that the allowance is made exparte and without notice. Thus, for example, want of jurisdiction to issue the writ may be shewn on a motion to quash; but the court would not, on such motion, sustain an attempt to shew that the reason assigned for the allowance, or that other reasons, if such there were, on which reliance was placed to annul the proceeding to be inquired of by the writ, were untrue in fact or ineffectual in law.
The way is then open to examine the truth and effect of the grounds exhibited by David Mairs for quashing this writ. These ^grounds are mainly supported as to [*23 matters of fact, by the affidavits of Apollo Mairs and Abraham Tilton. But it is objected that they are incompetent witnesses. It appears they are two of the persons who petitioned the Court of Common Pleas for the appointment of surveyors to lay out the road in question, and Tilton says he lives in the neighborhood, is accommodated by it, bore *30 part of the expenses of laying it out, and “ wishes the road to go through.” It also appears that the road was laid out in May, 1824, and no caveat having been filed or application for a review by freeholders made, it became under the order of the court at the ensuing term a lawful and recorded •road. It farther appears by the deposition of Apollo Mail's, that he is “not to bear any part of the expense of defending the road on this certiorari;” and by the deposition of Tilton, that he is not interested in the defence of the road in the present case, and. that he does not know that he ever said he would bear any part of the expenses. Neither of them have any land touched by the road. Hence it is manifest that the interest of these deponents, if they have any, affects their credibility and not their competency. On the score of credibility it is to be remarked that these witnesses and their testimony stand wholly unimpeached and uncontradicted by any other evidence, and that the facts which their affidavits are produced to prove, having occurred, if at all, in the presence of a number of persons, were readily, if untrue, susceptible of contradiction. Apollo Mairs deposes that Bobert Woodward “was not present when the surveyors began to view the road, but fell in with them while on the road, and was present at the debate before the surveyors. He consented to the laying of the road. He told me [the witness] that the road would not have been laid but for him, that he had spoken to the surveyors about it. The surveyors had told him, he said, that they would not have laid it without the consent of all the land owners, as they had varied from the order of the court; that it would not be worth while to lay it without the consent of all the land owners, as if caveated it would have been set aside, and he (Bobert) had told the surveyors that he had got his brother Samuel to consent that it should be laid, and that it was very necessary there should be a road there. The surveyors had concluded that if all parties were willing it should be a road, and that upon that principle they had laid it! This was *31 the discourse between him and the surveyors, as he told me.” — Tilton ^deposes, that “ on the day the surveyors [*24 laid out the road in question, when they were about half way through the view, Robert Woodward said he was glad there was like to be a road, the neighbors wanted one. After the surveyors decided to lay out the road, and so informed the persons present, Robert Woodward said, gentlemen, you may thank me for the road, if it had not been for mo you would not have got it through.” Now, upon these facts, it seems to me not to admit of doubt or argument that the attempt to set aside the road, because it varies from the route originally proposed, is against good faith. The variance was produced by the very person who now complains of it. Without his interference the road ■would not have been laid, or would have been laid on the route at first described. By his advice and importunity the departure from the order of the court was effected. Surely then his lips ought to be hermetically sealed. He cannot be permitted to complain of what may in truth be called his own act, his deliberate act, done with full knowledge of its consequences, both in law and fact.
It was insisted by the prosecutor’s counsel that these affidavits only prove the declarations of Robert Woodward at a time when he had no interest in the land, he having purchased the farm since the road was laid out and recorded. And what then ? — Are these declarations untrue ? Do the counsel of Mr. Woodward intend so to insist? I am sure they do not; because I am persuaded they are well acquainted with the fair and respectable character he has always sustained. They mean doubtless that as he had no interest at the time, his acts then done ought not to prejudice him. But the rule is otherwise; the objection is a persona] one. However effectively Samuel Woodward, had he remained the owner, might have availed himself of tho alleged variance, if no responsibility for the acts of Robert could be shewn against him, the case with Robert is widely *32 different. Samuel, as lie himself testifies, took no measures to oppose the road after it was laid, but desisted from all opposition. Robert must stand or fall by his own acts. And if he had no interest, and his interference was gratuitous, and he has since purchased the farm, cum onere, as it appears he did, some six months after the road was laid, the case is made the stronger against him. It is a fair case for the application of the maxim, consensus tollit errorem, against those who have given consent. The damnum sine injuria is fully exemplified.
*25] *It is objected, that there are variances in other parts besides the farm now owned by Robert Woodward. A full answer is found in the depositions. ITe told Mairs, the road would not have been laid out but for him. When the surveyors announced their determination to lay out the road, he said to the persons present, “you may thank me for the road, if it had not been for me you would not have got it through.”
It was further contended that no man has a right to make an agreement for the public. The truth of the position is promptly yielded; and if the public are the complainants we will give them the full benefit-of it. But when we neither see by the writ nor hear by the suggestion of counsel that any other person complains, beside Robert Woodward; when we see from a written document produced and proved before us that all the other land owners are satisfied; when we learn from the evidence that another tribunal of surveyors called by him according to law to vacate the road, have refused to do so; and that the road has been opened, several bridges made, and hundreds of dollars expended upon it by the public, we do not feel ourselves at liberty to allow him to personate the public, or to assume its aegis for protection from the consequences of his own acts.
Let the certiorari be quashed.